[Cite as *AK Steel Corp. v. Arcelormittal USA, L.L.C.*, 2016-Ohio-3285.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

AK STEEL CORPORATION,              :

    Plaintiff-Appellant,              :          CASE NO.   CA2015-11-190

                                   :          O P I N I O N
    - vs -                                                      6/6/2016

                                     :

ARCELORMITTAL USA, LLC, et al.,    :

    Defendants-Appellees.            :

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV15-07-1543

Thompson Hine LLP, Deborah S. Brenneman, George B. Musekamp, 312 Walnut Street, Suite 1400, Cincinnati, Ohio 45202, for plaintiff-appellant

Sebaly Shillito + Dyer, Robert G. Hanseman, James A. Dyer, 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423-1013 and Seyfarth Shaw LLP, Lynn A. Kappelman, Kristine R. Argentine, 131 South Dearborn Street, Suite 2400, Chicago, IL 60603-5577, for defendant-appellee, Arcelormittal USA, LLC

Faruki Ireland & Cox PLL, Charles J. Faruki, D. Jeffrey S. Sharkey, Michael S. Mayer, 110 North Main Street, Suite 1600, Dayton, Ohio 45402, for appellee, Keith J. Howell

    **RINGLAND, J.**

    {¶ 1}   Plaintiff-appellant, AK Steel Corporation, appeals the decision of the Butler County Court of Common Pleas, which modified a noncompete agreement in favor of its former employee, Keith Howell, who voluntarily resigned his position with the company to

accept a position with defendant-appellee, ArcelorMittal USA L.L.C.[1]  For the reasons discussed below, we reverse the decision of the trial court and remand for further proceedings.

{¶ 2}  AK Steel and ArcelorMittal are competing steel manufacturers.[2]  Howell is a former executive for AK Steel.  The record reflects that Howell excelled during his 18-year employment with the company, eventually rising to the level of Senior Vice President of Operations, the fourth-highest executive position within AK Steel.  As a high ranking executive with AK Steel, and in his various roles within the company over the course of his employment, Howell has had access to confidential information relating to company operations, strategy, manufacturing operations, logistics, capital expenditures, trade secrets, customer lists, and pricing and margin information.

{¶ 3}  The dispute in the present case involves a March 26, 2014 "Executive Officer Severance Agreement."  The severance agreement provided Howell a monetary severance package in the event of his termination.  In addition, the agreement contained a noncompete provision, which limited Howell's ability to work for a competing business for a one-year period following the termination of his employment with AK Steel.

{¶ 4}  In late 2014, ArcelorMittal began a nationwide search to identify a candidate to serve as its Chief Operating Officer.  Howell was identified and became the leading candidate for the position.  Following several interviews, Howell was hired for the COO position. Howell resigned his employment with AK Steel on June 12, 2015.

{¶ 5}  Thereafter, AK Steel issued a cease-and-desist notice to Howell and

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

2. The record in these proceedings has been sealed from public disclosure, and this court has taken steps to refrain from identifying any asserted trade secret or confidential information.  Resolution of this case can be accomplished without disclosure of the information that the parties consider confidential.

ArcelorMittal requesting that each honor Howell's noncompete agreement. On July 6, 2015, AK Steel filed this lawsuit against Howell and ArcelorMittal asserting claims for breach of the noncompete agreement, misappropriation of trade secrets, and intentional interference with a contract. AK Steel requested a temporary restraining order and preliminary injunctive relief against Howell and ArcelorMittal. The parties entered into an agreed TRO and the motion for preliminary injunctive relief proceeded to a three-day evidentiary hearing.

{¶ 6} Following the close of evidence, the trial court found that the severance agreement was supported by sufficient consideration, and that AK Steel demonstrated a likelihood of success on the merits. However, the trial court also found the one-year noncompete provision to be unduly burdensome and modified the length of time to six months. AK Steel now appeals the decision to modify the noncompete provision to six months, raising a single assignment of error for review.

{¶ 7} THE TRIAL COURT ERRED WHEN IT MODIFIED THE ONE YEAR TEMPORAL RESTRICTIVE COVENANT OF HOWELL'S NON-COMPETE AGREEMENT.

{¶ 8} In its sole assignment of error, AK Steel argues the trial court erred by modifying the length of the noncompete provision from one year to six months. We agree with AK Steel and find the trial court erred by reducing the period of the noncompete.

{¶ 9} The purpose of a preliminary injunction is to preserve the status quo of the parties pending a final adjudication of the case upon the merits. *Back v. Faith Properties, L.L.C.*, 12th Dist. Butler No. CA2001-12-285, 2002-Ohio-6107, ¶ 36. In ruling on a motion for preliminary injunction, a trial court must consider whether (1) the moving party has shown a substantial likelihood that he or she will prevail on the merits of their underlying substantive claim; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) issuance of the injunction will not harm third parties; and (4) the public interest would be served by issuing the preliminary injunction. *DK Prods., Inc. v. Miller*, 12th Dist. Warren No.

CA2008-05-060, 2009-Ohio-436, ¶ 6.

{¶ 10} The party seeking the preliminary injunction must establish each of these elements by clear and convincing evidence. *Planck v. Cinergy Power Generation Servs. L.L.C.*, 12th Dist. Clermont No. CA2002-12-104, 2003-Ohio-6785, ¶ 17. However, no single factor is dispositive; "if there is a strong likelihood of success on the merits, an injunction may be granted even though there is little evidence of irreparable harm and vice versa." *Fischer Dev. Co. v. Union Twp.*, 12th Dist. Clermont No. CA99-10-100, 2000 WL 525815, at *3 (May 1, 2000). We will not disturb the trial court's judgment granting a preliminary injunction absent of an abuse of discretion. *Freeman Indus. Prods., L.L.C. v. Armor Metal Grp. Acquisitions, Inc.*, 193 Ohio App. 3d 438, 2011-Ohio-1995, ¶ 17 (12th Dist.).

{¶ 11} In general, most claims of overbreadth in a noncompete agreement concern the size of the restricted territory and the duration of the restriction. The Ohio Supreme Court has addressed the enforceability of such restrictions in *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25 (1975). In that case, the court found that a noncompete agreement that restrains an employee from competing with a former employer must be reasonable to be enforceable. A noncompete agreement is reasonable if: (1) its restrictions are not greater than that which is required to protect the employer, (2) it does not impose an undue hardship on the employee, and (3) it is not injurious to the public. *Id.* at paragraph two of the syllabus.

{¶ 12} In determining whether the restrictions are reasonable, the following factors should be considered:

> [t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates

- 4 -

as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.

*Id.* at 25.

{¶ 13} In the present case, the relevant noncompete provision is a worldwide limitation from any employment with a competing steel manufacturer for a period of one year. In pertinent part:

> **Restrictive Covenants.** In exchange for [AK Steel's] agreement to provide you with the severance benefits opportunities set out in this Agreement * * * you agree that * * * you will not, directly or indirectly, do any of the following:
>
> a. serve as an employee, employer, consultant, agent, principal, partner, owner, officer, or director of any business engaged directly or indirectly in competition with [AK Steel], including but not limited to a business engaged in the research, development, manufacturing, marketing or sale of carbon, electrical or stainless steel, steel pipe or tubing products, or any other metal or non-metal products that are competitive with [AK Steel] products, or that has an intent or plan to engage in such business during the one-year period following the date when your employment with [AK Steel] terminates.
>
> * * *

{¶ 14} The trial court granted AK Steel's motion for preliminary injunctive relief, but modified the noncompete provision to a period of six months. In so doing, the trial court stated that "[e]nforcing the non-compete as written would cause an undue hardship" and further stated that "the Court is not convinced that AK Steel can demonstrate that a one-year restriction is necessary to protect its interests." As a result, the trial court found "[h]aving balanced the hardships and restraints on Howell with AK Steel's interests, the Court finds that AK Steel will likely succeed in enforcing the severance agreement with a modification to the noncompete provision prohibiting competition within the metals industry for a period of six months."

- 5 -

{¶ 15} Based on our review of the record, we find the trial court erred by modifying the noncompete agreement. Although a court may modify a noncompete provision that it finds unreasonable, we note that "[t]oo often courts have attempted to rewrite contracts for parties that appear after the fact to be more equitable to one or more of the parties. The *Raimonde* opinion acknowledges that temptation and its test should therefore be strictly applied." *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*, 124 Ohio App.3d 308, 318 (10th Dist. 1997). The record in this case does not establish that a one-year noncompete agreement was unreasonable.

{¶ 16} Initially, we note that this matter does not involve a matter of public harm under the third prong of *Raimonde*. This matter involves the interpretation and reasonableness of a private contract between a sophisticated executive of a multi-billion dollar steel company and his former employer. Rather, this case centers on the first and second prongs of the *Raimonde* decision.

{¶ 17} The factors articulated in *Raimonde* first require that the restriction be necessary to protect the employer. The record demonstrates that Howell had access to confidential information and corporate strategic initiatives that AK Steel had a legitimate business interest in keeping confidential, or otherwise out of the knowledge of its direct competitors. For example, AK Steel executives testified that Howell had information about AK Steel's business plan from years 2015-2017, was privy to certain manufacturing processes for current and next generation products, and had information related to company strategy and plant location. Furthermore, there was testimony with respect to the pricing and awarding of annual contracts that make up a large portion of AK Steel's business. One such executive testified about the nature of the industry with respect to annual contract negotiating and the necessity of a one-year noncompete provision. Following a one-year period of noncompetition, a vacating employee would no longer have confidential information related

to that year's margin, pricing, and negotiation information. Thus, following a one-year period, AK Steel could be sure that a competitor would not be unfairly advantaged by hiring an AK Steel executive with knowledge of pricing and margin information vital to AK Steel's confidential negotiations.

{¶ 18} To be sure, there is no allegation that Howell has in any way attempted to steal confidential or trademarked information for the benefit of ArcelorMittal. Furthermore, it is acknowledged among the parties that certain information available to Howell, such as highly complex and detailed manufacturing processes and patented technology, are simply not capable of reproduction from memory. Rather, the pertinent concerns related to confidential information involving company strategy and information that is relied upon at such a fundamental level that makes non-disclosure nearly impossible. Although there is no evidence to suggest any malicious intent on the part of ArcelorMittal, as competing multi-billion dollar companies operating worldwide, there is a certain amount of information, in particular strategic decisions, that the companies have a legitimate interest in remaining confidential. The record establishes that AK Steel has a legitimate interest in restricting Howell, the fourth-highest executive within the company, from accepting employment from a competitor for a one-year period.

{¶ 19} Pursuant to the second factor under *Raimonde*, enforcement of the agreements also does not impose undue hardship upon Howell. Howell maintains that the one-year noncompete agreement imposes an undue hardship. As Howell's entire career has been in the steel industry, he alleges that he has no other opportunities to provide for his family. The trial court agreed and the noncompete agreement was shortened to six months. However, in considering this factor, we find the trial court disproportionately considered this factor in favor of Howell. "To be sure, any person who is prevented from practicing his profession or trade for a period of time in an area in which it has been practiced, suffers some hardship.

However, the *Raimonde* test requires more than just some hardship * * *." *Wall v. Firelands Radiology, Inc.*, 106 Ohio App. 3d 313, 333 (6th Dist. 1995); *Robert W. Clark, M.D., Inc.* 124 Ohio App.3d at 318.

{¶ 20} The evidence in this case demonstrated that Howell would be prevented from maintaining employment in the steel industry for a period of one year. However, the trial court failed to consider that "sole means of support," as noted by the *Raimonde* decision is not limited to employment income. The record here supported a finding that Howell was a highly sought after senior executive of a major steel company, and was recruited by an even-larger competitor. Although there was testimony that Howell had a family that depended on his income, there was also testimony that Howell had a large, vested retirement plan from AK Steel, and his new employment with ArcelorMittal would include a $900,000 signing bonus. In resolving the issue of "undue hardship," we find the trial court erred by failing to consider the additional resources in determining whether the noncompete provision deprived Howell of his sole means of support.

{¶ 21} In balancing the hardship imposed on Howell with the legitimate business interests of AK Steel, we find the trial court erred by reducing the noncompete provision to six months. Although we acknowledge that a one-year period of prohibition from employment in the steel industry amounts to some hardship, we find that it does not amount to undue hardship, which is relevant to whether the agreement is "unreasonable." Although the record may establish that Howell did not actively seek trademarked material, or indeed exhibit any malice or bad behavior in exiting his role at AK Steel, the simple fact remains that Howell was a high-ranking figure at AK Steel with an intimate knowledge of its business operations and processes. As a sophisticated businessperson, Howell voluntarily entered into the "Executive Agreement," which contained the noncompete agreement.

{¶ 22} The trial court was required to determine whether the one-year restriction was

reasonable; it was not to determine whether the restriction perfectly accommodated Howell or find a "more reasonable" restriction. Indeed, as AK Steel correctly argues, if a one-year restriction is unreasonable based on the facts in this case, it is difficult to comprehend circumstances in which a one-year noncompete agreement would ever be reasonable. Accordingly, we find the trial court erred by modifying the noncompete agreement.

{¶ 23} Judgment reversed and remanded.

M. POWELL, P.J., and S. POWELL, J., concur.