[Cite as *Hicks v. Clermont Cty. Republican Cent. Commt.*, 2024-Ohio-3049.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| CHRISTOPHER R. HICKS, | : | |
| Appellant, | : | CASE NO. CA2024-02-011 |
| - vs - | : | O P I N I O N<br>8/12/2024 |
| | : | |
| CLERMONT COUNTY REPUBLICAN<br>CENTRAL COMMITTEE, et al., | : | |
| | : | |
| Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2024 CVH 00009

Christopher R. Hicks, pro se.

Subashi, Wildermuth & Justice, and Brian L. Wildermuth, for appellees.

**S. POWELL, P.J.**

{¶ 1} Appellant, Christopher R. Hicks, appeals the decision of the Clermont County Court of Common Pleas denying his motion for a preliminary injunction from the indefinite suspension he received from appellee, the Clermont County Republican Central Committee ("CCRCC"), barring him from participating in its political meetings and political

functions despite his status as an elected CCRCC committeeperson.[1]  For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

**{¶ 2}**   On May 3, 2022, Hicks was elected to the CCRCC to serve a four-year term as the committeeperson for precinct P1P located in Union Township, Clermont County, Ohio.  The CCRCC is the controlling committee for the Clermont County Republican Party organized under the auspices of R.C. Chapter 3517.  This includes R.C. 3517.02 regarding the election of members to the controlling committees of each major political party; R.C. 3517.03 discussing the membership of committeepersons who had been elected onto each major political party's controlling committee; and R.C. 3517.05 addressing the procedure to fill vacancies within each major political party's controlling committee due to, among other reasons, the "failure to elect" a committeeperson to fill each available membership position on the controlling committee.  There are 168 committeeperson positions on the CCRCC, one seat for each precinct located within the county.  The record indicates that 48 of those seats were left vacant following the May 3, 2022 election.

**{¶ 3}**   On January 4, 2024, Hicks filed a pro se complaint seeking a declaratory judgment and permanent injunction against the CCRCC, along with its chairman and vice-chairman, Jeff Corcoran and Byron Baxter.  To support his complaint, Hicks set forth 13 supposed "counts" against the CCRCC, Corcoran, and Baxter.  Within those 13 counts, Hicks argued that the CCRCC, through the actions of its chairman and vice-chairman, was operating as a "sham organization" that had been appointing unqualified committeepersons to fill its precinct vacancies in violation of R.C. 3517.02, R.C. 3517.03,

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

- 2 -

R.C. 3517.05, and Article XV, Section 4 of the Ohio Constitution, which had resulted in "his voting rights being unlawfully diluted…".[2]  Therefore, in his prayer for relief, Hicks, who refers to himself as the Majorie Taylor Greene and Matt Gaetz of the CCRCC, requested the trial court to issue an "**immediate temporary restraining order**" forbidding the CCRCC from, among other things, "allowing participation and voting rights, in any way, to any illegally appointed person who fails to reside, is not residing, and is removed from, the precinct they purport to represent" during the pendency of this case.[3] (Bold and underlined text in original.)

{¶ 4}   Hicks also argued within his complaint that the CCRCC, through the actions of its chairman and vice-chairman, had been improperly excluding him from participating in its political meetings and political functions—functions that Hicks referred to in his complaint as "voting, motions, etc."—despite his status as the elected committeeperson for Union Township's precinct P1P.  The record indicates that Hicks' exclusion from CCRCC's political activities occurred following a 56-13 vote taken at the CCRCC's meeting held on September 20, 2023.  This vote occurred after a motion was made by an unidentified committeeperson to indefinitely suspend Hicks' "non-statutory rights of membership" as an elected CCRCC committeeperson.  Therefore, of the 69 committeepersons who voted on the motion, 81% voted in favor of indefinitely suspending Hicks from participating in the CCRCC's political meetings and political functions at that

---

2. Article XV, Section 4 of the Ohio Constitution provides that, "No person shall be elected or appointed to any office in this state unless possessed of the qualifications of an elector."  R.C. 3503.01(A) defines "the qualifications of an elector" as United States' citizens ages 18 years old and over "who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a resident of the county and precinct in which the citizen offers to vote, and has been registered to vote for thirty days . . . ."

3.  Marjorie Taylor Greene and Matt Gaetz are elected Republican Party members of the United States House of Representatives serving the 14th Congressional District of Georgia and the 1st Congressional District of Florida, respectively.  Congresswoman Greene and Congressman Gaetz are considered by some to be controversial given certain of their comments made to the media and fervent support of former President Donald J. Trump and his "Make America Great Again" agenda.

September 20, 2023 meeting.

{¶ 5} The CCRCC's vote to indefinitely suspend Hicks arose after numerous committeepersons raised complaints of misconduct against Hicks and his "speech and behavior" against the CCRCC. This included allegations that Hicks had been "taunting" members of the opposing Clermont County Democratic Party to "run candidates" against those candidates backed by the CCRCC. This also included allegations that Hicks, whose behavior the record indicates had been problematic and interruptive during the September 20, 2023 meeting just prior to when the vote to suspend him took place, had mocked and ridiculed donors who had contributed to candidates and causes supported by the CCRCC.[4] This is in addition to Hicks accusing several of his fellow committeepersons of being corrupt. Therefore, given that the CCRCC had been excluding him from its political meetings and political functions following its September 20, 2023 meeting, Hicks also requested the trial court issue a preliminary injunction that would allow him to participate in all CCRCC's functions, both political and governmental, during the pendency of this case.[5]

{¶ 6} Although not explicit, Hicks' request for a preliminary injunction was made pursuant to Civ.R. 65(B). Pursuant to that rule, an application for preliminary injunction "may be included in the complaint or may be made by motion." "The purpose of a

---

4. We note that an email written by the CCRCC's vice-chairman, Byron Baxter, indicates that Hicks' "reaction" and "conduct" at the September 20, 2023 meeting was the real reason that the "motion to impose disciplinary sanctions" against Hicks was made rather than the numerous complaints of misconduct levied against Hicks by his fellow committeepersons. However, even assuming that were true, the reason for Hicks' suspension is not material to the issues raised in this appeal.

5. There is no dispute that Hicks' suspension has not precluded him from participating in the statutorily prescribed, so-called "governmental" functions of the CCRCC. This necessarily includes Hicks being permitted to consider and vote to fill vacancies in county offices pursuant to R.C. 305.02. Committeepersons who are appointed to represent a precinct other than the precinct in which the appointed committeeperson resides, however, are not permitted to participate in the governmental functions of the CCRCC. This is because, at least according to the CCRCC, the appointed committeeperson is not deemed an "elector" who had been elected to represent that precinct as that term is used in R.C. 3517.02

- 4 -

preliminary injunction is to preserve a status between the parties pending a trial on the merits." *Gordon v. Mt. Carmel Farms LLC*, 2024-Ohio-1313, ¶ 36 (12th Dist.). As discussed more fully below, in ruling on Hicks' motion for preliminary injunction, the trial court was to consider four factors. *Nelsons v. Ohio High School Athletic Assn.*, 2018-Ohio-4169, ¶ 21 (3d Dist.). Those four factors being whether: "(1) the moving party has shown a substantial likelihood that he or she will prevail on the merits of their underlying substantive claim; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) issuance of the injunction will not harm third parties; and (4) the public interest would be served by issuing the preliminary injunction." *Battelle Memorial Inst. v. Big Darby Creek Shooting Range*, 2011-Ohio-793, ¶ 21 (12th Dist.).

**{¶ 7}** On January 10, 2024, the trial court issued an entry denying Hicks' request for a temporary restraining order. In so doing, the trial court stated:

> The Court finds that the verified complaint and motion with memorandum filed by [Hicks] do not set forth specific facts which demonstrate that [Hicks] will be immediately and irreparably harmed by [the CCRCC and its chairman and vice-chairman, Corcoran and Baxter]. Further, [Hicks] has not demonstrated his efforts to notify [the CCRCC, Corcoran, or Baxter] of his request in advance of the filing of the motion for the restraining order.

> While it is yet to be seen whether [Hicks] can establish that [the CCRCC has] failed to comply with the requirements of O.R.C. 3517.01, et. seq., and/or conducted meetings without permitting an elected precinct member to participate, such proof is for consideration at both a hearing on preliminary injunction and or the trial on the merits.

However, although denying Hicks' request for a temporary restraining order, the trial court left Hicks' motion for a preliminary injunction pending. The trial court instead scheduled the matter for a hearing on Hicks' preliminary injunction motion to be held on January 18, 2024. This hearing was later continued to January 31, 2024.

**{¶ 8}** On January 31, 2024, the trial court held the previously scheduled hearing

on Hicks' motion for a preliminary injunction. During this hearing, Hicks set forth his arguments as to why he believed there was a substantial likelihood that he would prevail on the merits of his complaint. Hicks also set forth his arguments as to the irreparable harm he claimed to be suffering by his indefinite suspension from the CCRCC's political activities. To support his arguments, Hicks called three witnesses to the stand to testify about "the appointment process and the situations involving people" that he believed had been "illegally appointed" to serve as committeepersons with him on the CCRCC. Those three witnesses being: (1) Blair Terpstra, a CCRCC committeeperson appointed to represent Union Township's precinct N despite Terpstra residing in Union Township's precinct P1P, the same precinct that Hicks was elected to represent as a CCRCC committeeperson following the May 3, 2022 election; (2) Jenny Lanham, a CCRCC committeeperson chosen by her fellow CCRCC committeepersons to fill one of the 16 seats on the CCRCC's executive committee; and (3) Jeff Corcoran, the chairman of the CCRCC.

**{¶ 9}** Once Hicks had concluded the presentation of his case, the CCRCC countered by calling its own witness, Byron Baxter, the vice-chairman of the CCRCC, and one of the just 12 professional parliamentarians credentialed in Ohio by the National Association of Parliamentarians.[6] Following Baxter's testimony, Hicks unleashed a lengthy diatribe as to why it was his understanding of the applicable law that was correct,

---

6. In his brief, Hicks takes issue with the trial court referring to Baxter within its decision as a "state certified parliamentarian." This is because, according to Hicks, such a designation "does not exist in Ohio." However, while it may be true that the trial court mistakenly referred to Baxter as a "state certified parliamentarian" rather than one of the just 12 professional parliamentarians credentialed in Ohio by the National Association of Parliamentarians, this is a distinction without any meaningful difference in this case. This is because, and as CCRCC's counsel notified the trial court at the hearing on Hicks' motion for a preliminary injunction, Baxter was not testifying as an expert witness on the parliamentary procedure of the CCRCC under Evid.R. 702. Baxter was instead testifying as a lay witness under Evid.R. 701 by offering his opinion and first-hand experiences with Hicks in his role as the vice-chairman of the CCRCC. For information regarding the National Association of Parliamentarians, including its professional credentialing process, see the National Association of Parliamentarians' website located at https://www.parliamentarians.org/ (last visited July 31, 2024).

and that any other interpretation of the law other than that of his own was misguided and wrong. This included Hicks providing a lengthy explanation to the trial court as to what he believed the language found in R.C. 3517.02, R.C. 3517.03, R.C. 3517.05, and Article XV, Section 4 of the Ohio Constitution meant regarding the election and appointment of committeepersons to controlling committees of major political parties like the CCRCC. This ultimately resulted in Hicks exceeding the 90-minute time limit that he and the CCRCC had been allotted to present their respective positions as it related to Hicks' preliminary injunction motion.

{¶ 10} On February 6, 2024, the trial court issued a decision denying Hicks' motion for a preliminary injunction. In so doing, the trial court determined that: (1) "there is not present at this time a substantial likelihood that [Hicks] will prevail on the merits of his complaint;" (2) Hicks "has not demonstrated that he suffered or will suffer irreparable harm as a result of his suspension from partisan political functions" of the CCRCC; and (3) "[t]here is no certainty to what extent the public interest will be served, if any," by granting Hicks a preliminary injunction. The trial court made this determination based upon the following three findings:

> **First**, CCRCC accepts committee members who are certified by the Board of Elections to have been elected as precinct committee members. **Second**, neither the Ohio Constitution nor R.C. 3715.05 require appointees to vacant committee member positions to be residents of the precinct. **Third**, while CCRCC gives preference to residents of precincts seeking appointment, where there is no resident applicant, its Constitution . . . allows for residents of the township to be appointed.

(Bold text in original.)

{¶ 11} On February 7, 2024, Hicks filed a motion requesting the trial court reconsider its decision to deny his motion for a preliminary injunction. Shortly thereafter, on February 12, 2024, the trial court issued an entry denying Hicks' request that it

reconsider its decision. In reaching this decision, the trial court noted that the "arguments and citations" that Hicks included within his reconsideration motion were "essentially the same" as what he had presented at the January 31, 2024 hearing held on his preliminary injunction motion.

**Hicks' Appeal and Single Assignment of Error**

{¶ 12} On February 15, 2024, Hicks filed a notice of appeal from the trial court's decision to deny his motion for a preliminary injunction. Following briefing, oral argument was held before this court on July 8, 2024. Hicks' pro se appeal now properly before this court for decision, Hicks has raised one assignment of error for review. In his single assignment of error, Hicks argues the trial court erred by denying his motion for a preliminary injunction. We disagree.

*Hicks' Appeal Was Taken from a Final Appealable Order*

{¶ 13} Prior to addressing the specifics of Hicks' single assignment of error, we note that, on February 26, 2024, CCRCC moved this court to dismiss Hicks' appeal for want of jurisdiction. To support its motion, CCRCC argued that because Hicks' appeal sought review of the trial court's decision denying his motion for a preliminary injunction where the ultimate relief that Hicks was seeking was a permanent injunction against the CCRCC, Hicks' appeal in this case was not taken from a final appealable order as defined by R.C. 2505.02(B)(4). This court disagreed and denied CCRCC's motion to dismiss in an entry filed on March 14, 2024.

{¶ 14} In so holding, this court determined that the trial court's decision denying Hicks' motion for a preliminary injunction affected his ability to fully participate in CCRCC's political meetings and political functions, a privilege that Hicks enjoyed as a member of CCRCC, that arguably would be adversely affected by the passage of time, and for which compensation would not suffice. This court therefore concluded that, under the

circumstances of this case, the trial court's order "denying Hicks' motion for preliminary injunction was a final appealable order because it satisfies the requirements of R.C. 2505.02(B)(4)." In reaching this decision, this court determined that the trial court's decision "denied a provisional remedy, in effect determines the action and prevents a judgment with respect to the provisional remedy, and Hicks will not be afforded a meaningful or effective remedy following final judgment."

{¶ 15} Accordingly, as this court has already determined that Hicks' appeal was taken from a final appealable order as defined by R.C. 2505.02(B)(4), we need not consider that issue again within this opinion. *See Bond Safeguard Ins. Co. v. Dixon Builders I, LLC*, 2012-Ohio-3313, ¶ 18, fn. 3 (12th Dist.) (noting that, although appellees did not raise the issue of whether the trial court's order denying appellants' motion for a preliminary injunction was a final appealable order, because the issue is jurisdictional, this court was nevertheless "obligated to consider it, sua sponte, and dismiss the appeal" if it was not taken from a final order). We will instead focus our attention on Hicks' appeal and the merits of Hicks' four arguments raised within his single assignment of error challenging the trial court's decision to deny his preliminary injunction motion.

*Abuse of Discretion Standard of Review*

{¶ 16} A preliminary injunction is a form of injunctive relief. *Neighbors For Responsible Land Use v. Akron*, 2006-Ohio-6966, ¶ 7 (9th Dist.). "The grant or denial of a motion for injunctive relief is solely within the trial court's discretion." *N. Fairfield Baptist Church v. G129, LLC.*, 2011-Ohio-3016, ¶ 18 (12th Dist.). Thus, given the broad discretion afforded to the trial court, this court will not disturb a trial court's decision to either grant or deny the moving party's request for a preliminary injunction absent an abuse of discretion. *Freeman Indus. Prods., LLC. v. Armor Metal Group Acquisitions, Inc.*, 2011-Ohio-1995, ¶ 17 (12th Dist.). "When applying the abuse of discretion standard,

a reviewing court may not substitute its judgment for that of the trial court." *Berry v. Bowling*, 2019-Ohio-898, ¶ 23 (4th Dist.), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). Rather, "[a] decision constitutes an abuse of discretion when the trial court acted unreasonably, arbitrarily, or unconscionably." *Wells Fargo Bank v. Maxfield*, 2016-Ohio-8102, ¶ 32 (12th Dist.). "[T]he vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Effective Shareholder Solutions v. Natl. City Bank*, 2009-Ohio-6200, ¶ 9 (1st Dist.). "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Stidham v. Wallace*, 2013-Ohio-2640, ¶ 8 (12th Dist.), quoting *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

*Preliminary Injunction Standard*

{¶ 17} "A preliminary injunction is a provisional remedy that is considered interlocutory, tentative, and impermanent in nature." *Bettman v. JDH Bldg. Group, LLC*, 2024-Ohio-1092, ¶ 7 (12th Dist.). "The purpose of a preliminary injunction is to preserve the status quo of the parties pending a final adjudication of the case on the merits." *Battelle Memorial Inst. v. Big Darby Creek Shooting Range*, 2011-Ohio-793, ¶ 21 (12th Dist.). As noted above, when ruling on an applicant's request for a preliminary injunction, the trial court must consider four factors. *Ohio Democratic Party v. LaRose*, 2020-Ohio-4778, ¶ 34 (10th Dist.). Those four factors being whether: "(1) the moving party has shown a strong or substantial likelihood that he or she will prevail on the merits of the underlying substantive claim; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) the issuance of the injunction will not harm third parties; and (4) the public interest would be served by issuing the preliminary injunction." *S.W. Ohio Basketball, Inc. v. Himes*, 2021-Ohio-415, ¶ 32 (12th Dist.). The applicant seeking the preliminary injunction bears the burden of establishing each of those four factors by clear

and convincing evidence. *Gimex Properties Corp., Inc. v. Reed*, 2022-Ohio-4771, ¶ 61 (6th Dist.). No single factor is dispositive, however. *AK Steel Corp. v. ArcelorMittal USA, LLC*, 2016-Ohio-3285, ¶ 10 (12th Dist.). Therefore, in circumstances where "there is a strong likelihood of success on the merits, an injunction may be granted even though there is little evidence of irreparable harm and vice versa." *Fischer Dev. Co. v. Union Twp.*, 2000 Ohio App. LEXIS 1873, *8 (12th Dist. May 1, 2000).

*Hicks' Arguments and Analysis*

**{¶ 18}** In support of his single assignment of error, Hicks raises four "issues" for this court's consideration. Initially, Hicks argues the trial court's decision to deny his motion for a preliminary injunction must be reversed because the trial court unfairly denied him the right to testify at the hearing held on his motion, thereby preventing him from "testifying to establish harm and to establish facts" in violation of his due process rights. The record does not support Hicks' claim. The record instead firmly establishes that, when Hicks attempted to call himself as a witness, the trial court advised Hicks that counsel for the CCRCC would first be permitted to question the witness then testifying, Jeff Corcoran, the chairman of the CCRCC, before he could call himself as a witness. Specifically, after Hicks noted that he had no further questions for Corcoran, a witness that he had himself called to the stand to testify, the following exchange between the trial court and Hicks then occurred:

> THE COURT: Your turn, [counsel for CCRCC].
>
> MR. HICKS: Am I allowed to call myself?
>
> THE COURT: He gets to cross first.
>
> MR. HICKS: Oh, I'm sorry. My bad. I'm sorry.

**{¶ 19}** The record indicates that, following this exchange, Hicks never made another attempt to call himself as a witness. The record does establish, however, that

the trial court allowed Hicks to unleash a lengthy diatribe as to why it was his understanding of the applicable law that was correct, and that any other interpretation of the law other than that of his own was misguided and wrong. As noted above, this includes Hicks explaining to the trial court his interpretation of the language found in R.C. 3517.02, R.C. 3517.03, R.C. 3517.05, and Article XV, Section 4 of the Ohio Constitution. The record also indicates that, although done in an aggressive and rude manner, Hicks was also permitted to make a statement in his defense prior to the CCRCC voting to indefinitely suspend him from its political activities at its September 20, 2023 meeting. Therefore, as the record belies Hicks' claim that the trial court denied him the right to testify at the hearing held on his motion for a preliminary injunction, or that a violation of Hicks' due process rights had otherwise occurred prior to the CCRCC indefinitely suspending him from its political meetings and political functions at its September 20, 2023 meeting, Hicks' first argument lacks merit.

{¶ 20} Hicks next argues the trial court erred by either failing to apply, or by misapplying, "unambiguous law" when ruling on his motion for a preliminary injunction. According to Hicks, this includes the trial court misinterpreting what the word "from" means as it is used in R.C. 3517.03, a statute which provides that controlling committees of each major political party like the CCRCC are to consist of "one member *from* each election precinct in the county, or of one member *from* each ward in each city and from each township in the county, as the outgoing committee determines . . . ," subject, of course, to the manner in which vacancies on the controlling committees are to be filled, including those vacancies caused by the "failure to elect" as set forth in R.C. 3517.05. (Emphasis added.) Hicks argues that this also includes the trial court incorrectly determining that the CCRCC could indefinitely suspend him from participating in its political meetings and political functions despite hearing testimony from Byron Baxter, the

vice-chairman of the CCRCC, that "there is no basis in law, or even bylaws, for 'suspension' or action against a member for viewpoints they express."[7] Hicks claims the trial court's decision holding otherwise "essentially overturned" his election as the CCRCC committeeperson elected to represent Union Township's precinct P1P at the May 3, 2022 election.

{¶ 21} However, following a thorough review of the record, we find no error in the trial court's decision. This includes the common pleas court's decision finding "no statutory requirement that appointees to vacant seats must reside in the precise geographic area of the precinct which he/she represents." This is because, as the plain language set forth in R.C. 3517.05 establishes, and unlike the committeepersons who had been elected as members of the controlling committee pursuant to R.C. 3517.02, there is no statutory residency requirement for committeepersons who are voted in to fill vacancies by a controlling committee for a major political party like the CCRCC. Rather, as R.C. 3517.05 states:

> In case of vacancies caused by death, resignation, failure to elect, or removal from the precinct, ward, township, or district from which a committeeman was chosen, the controlling committee or, if authorized, the executive committee shall fill the vacancy for the unexpired term by a majority vote of the members of such committee.

{¶ 22} The language found in the Clermont County Republican Party's Constitution supports this determination. This is because, as first noted by the trial court below, the Clermont County Republican Party's Constitution provides, in pertinent part, that:

> The Clermont County Republican Central Committee… shall consist of the duly elected "committeemen" one from each

---

7. We note that Hick's summation of Baxter's testimony is not accurate and misrepresents the record properly before this court. Contrary to Hicks' claim, the record indicates that Baxter specifically testified that the CCRCC *could* take disciplinary action against him for his conduct—both inside and outside of the CCRCC's meetings—pursuant to Robert's Rules of Order, a set of bylaws that the CCRCC had adopted and incorporated by reference into the Clermont County Republican Party's Constitution. More information about Robert's Rules of Order can be found at https://robertsrules.com/ (last visited July 31, 2024).

precinct in Clermont County—for a term of four (4) years. The word "committeeman" shall be interpreted to include "committeewoman" and the plural thereof.

The Republican Central Committee shall also consist of those persons duly appointed by the elected members to fill any vacancy in any precinct in Clermont County, Ohio, in accordance with the law of the State of Ohio and this Constitution.

. . .

Beginning with the first meeting after the reorganization meeting, appointments may be made to fill vacancies or previously accepted vacancies at the next regularly scheduled Central Committee meeting. The Republican Central Committee shall fill the vacancy for the unexpired term by a majority vote of the members present.

Any individual who wants to be considered for appointment, and who resides within the precinct in which the vacancy exists, shall personally appear before the regularly scheduled Republican Central Committee meeting and request the appointment. The individual(s) must provide their qualification to be considered for the position. If the executive from the township does not have a nominee who resides in the precinct to fill the vacancy, and the person who appeared is qualified, then a vote will be taken. The appointment will be made if the candidate receives a majority vote of the members present.

{¶ 23} Continuing, the Clermont County Republican Party's Constitution then provides that:

[i]f the executive does have a nominee who resides in the vacant precinct, but that nominee could not personally be present for that regularly scheduled meeting, the executive may request the vote be postponed until the next regularly scheduled meeting. At the next meeting, the executive's nominee must personally appear to be considered for a vote to fill the vacancy in their precinct. If they do not appear, a vote can be taken regarding the first qualified individuals who were seeking the appointment, whether they are in attendance or not, having previously met the requirement of personally appearing before the Central Committee.

*If no qualified individual who resides in the vacant precinct seeks the position, an individual who resides in another precinct within the same township may be considered for the*

- 14 -

*appointment.* Such individual shall appear before the Central Committee at a regularly scheduled meeting, establish his or her qualifications, and receive a majority of the votes of the members present in order to be granted the appointment.

In any event, a qualified person who lives in the vacant precinct shall be appointed over a qualified person who does not live in the vacant precinct. The appointee shall retain the position until the next election.

(Emphasis added.). Therefore, just as the trial court found, and with which we agree, "[w]hile a precinct resident is given preference under the Constitution, the express language of the Constitution permits a non-resident to be appointed." To the extent Hicks' claims otherwise, such argument lacks merit.

{¶ 24} We also agree with the trial court finding committeepersons like Hicks do not hold an "office" within the meaning of Article XV, Section 4 of the Ohio Constitution. This is because, as the definitions in R.C. 3517.01(9), 3517.01(13), and 102.01(B) provide, the term "public office" does not include "an office of a political party," while the phrase "public official or employee" does not include "[a] person elected or appointed to the office of precinct . . . committee member under section 3517.03 of the Revised Code." This makes sense when considering "[c]ourts have determined that political parties are not governmental entities." *State ex rel. Ames v. Geauga Cty. Republican Cent. & Executive Commts.*, 2021-Ohio-2888, ¶ 37 (11th Dist.). Therefore, "[s]ince a political party is not a governmental entity, members of a political party's county central and executive committees are generally not considered public officials." *Id.* Accordingly, it was not an error for the trial court to find committeepersons like Hicks do not hold an "office" within the meaning of Article XV, Section 4 of the Ohio Constitution. Again, to the extent Hicks claims otherwise, such argument lacks merit.

{¶ 25} We further agree with the trial court's decision finding that, although indefinitely suspended from participating in the CCRCC's political meetings and political

functions, there was nothing to preclude Hicks from engaging in "political duties within his precinct and elsewhere, such as canvassing for voters, politicking for candidates and issues and making financial contributions to candidates and organization[s]." Therefore, because there is nothing prohibiting Hicks from engaging in political activities within his precinct, Union Township's precinct P1P, or anywhere else, Hicks' argument that his indefinite suspension from the political meetings and political functions of the CCRCC violated his First Amendment rights to the freedom of speech and the right to peaceably assemble must necessarily fail. This is because, while there can be no doubt the First Amendment grants Hicks the freedoms of speech and the right to peaceably assemble, neither are absolute so as to afford Hicks the right to speak and assemble whenever and wherever he so chooses. This would necessarily include the political meetings and political functions of the CCRCC. Accordingly, finding the trial court neither failed to apply nor misapplied "unambiguous law" when ruling on Hicks' motion for a preliminary injunction, Hicks' second argument also lacks merit.

{¶ 26} Hicks next argues the trial court erred by "not evaluating" within its decision each of the four factors it must consider when ruling on an applicant's request for a preliminary injunction set forth above. Hicks claims the trial court's decision and "three sentence conclusion" was instead "completely deficient," thus requiring this matter be reversed and remanded to the trial court for further proceedings. However, as a simple review of the record reveals, the trial court issued a detailed 12-page decision setting forth its findings of fact and conclusions of law. This included the trial court discussing at length three of the four factors that it was to consider when ruling on Hicks' motion for a preliminary injunction. That the trial court did not specifically address each of those four factors within its decision is of little consequence when considering the preliminary injunction standard is composed of just that—factors, not elements. *Von Stein v.*

*Brandenburg*, 2023-Ohio-4481, ¶ 26 (12th Dist.).

> Elements are required to be proven to establish a particular claim or defense. Factors, however, are not. Factors are instead a series of lesser, but nonetheless important, evidentiary facts and/or considerations that assist courts in reaching a determination on the ultimate issue at hand.

*Id.* at ¶ 27. It was therefore not an error for the trial court to not specifically mention within its decision whether it had considered each of the four factors making up the preliminary injunction standard. *Id.* at ¶ 28. Once again, to the extent that Hicks' claims otherwise, such argument lacks merit.

**{¶ 27}** In so holding, we note that "[a]ll that is required is for the trial court to 'engage in a balancing process designed to weigh the equities between the parties in determining whether or not injunctive relief is appropriate.'" *Id.*, quoting *Skinkiss v. Gleeson*, 2008-Ohio-356, ¶ 12 (12th Dist.). "This analysis involves the trial court 'considering and weighing 'the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief.'" *Skinkiss*, quoting *Miller v. West Carrollton*, 91 Ohio App.3d 291, 296 (2d Dist.1993). The trial court clearly did that in this case. Therefore, because the trial court did not err by "not evaluating" within its decision each of the four factors it was to consider when ruling on Hicks' motion for a preliminary injunction, Hicks' third argument likewise lacks merit.

**{¶ 28}** Hicks lastly argues the trial court erred by exhibiting "an attitude that was not reasoned, was arbitrary, and was unconscionable" when ruling on his motion for a preliminary injunction, which, according to Hicks, resulted in the court engaging in "irresponsible political hackery masquerading as jurisprudence." This argument is nothing more than Hicks exercising his First Amendment right to the freedom of speech by expressing his displeasure with the trial court's decision to deny his motion for a preliminary injunction. We can appreciate Hicks' displeasure in the trial court issuing a

decision ruling against him by denying his preliminary injunction motion. What we do not appreciate, however, is the way Hicks has expressed that displeasure by accusing the trial court of improperly intermingling politics within its decision.

{¶ 29} Other than Hicks' bare assertions to the contrary, there is nothing in the record to indicate the trial court in any way based its decision on politics or its involvement, or lack thereof, with the CCRCC or the Republican Party as a whole. For Hicks to claim otherwise is counterproductive and illustrative of the underlying reasons behind the CCRCC voting so overwhelmingly in favor of indefinitely suspending him from its political meetings and political functions. Or, as Jeff Corcoran, the chairman of the CCRCC, testified to at the hearing on Hicks' motion for a preliminary injunction stated, Hicks' "off the wall" and "outrageous" "value system" does not help advance the interests of the CCRCC and is otherwise "not productive to the Republican Party." We agree.

{¶ 30} We find this is particularly true in this case when considering the judge presiding over this case was a retired judge assigned to the case by the Ohio Supreme Court.[8] This appointment was done to avoid giving even the slightest hint of impropriety after each of the trial court's duly elected judges recused themselves from this case given their prior endorsements as judges by this iteration of the CCRCC.[9] The record indicates that the judge assigned to this case always acted in a professional, unbiased manner, something that the record indicates is not all that easy to do when considering the manner Hicks chooses to conduct himself, whether that be at a CCRCC meeting or in a courtroom. For example, when cross-examining Baxter, the vice-chairman of the CCRCC, about the

---

8. The judge the Ohio Supreme Court assigned to this case is a retired judge from the Darke County Court of Common Pleas. Darke County is located within the territorial jurisdiction of the Second District Court of Appeals.

9. We find it important to note that no judge currently on this court was endorsed by this iteration of the CCRCC as it was comprised following the election held on May 3, 2022.

underlying reasons upon which his suspension from the CCRCC was based, the transcript indicates the following exchange occurred:

> [HICKS]: So, you originally told people that I was suspended for actions . . . I'm sorry, I want to [make] sure I say this. Did you originally tell people that I was suspended for actions outside the meeting like my Facebook posts and my Twitter account?
>
> [BAXTER]: Absolutely not.
>
> [HICKS]: Okay. So, from the beginning, the issue was you believe in the meeting was that I did some behavior in the meeting after Mr. Corcoran introduced allegations, which is what the minutes say, that is what then caused it to be an action of mine in the meeting that's why I wasn't set to do a trial?
>
> [BAXTER]: Correct.
>
> [HICKS]: What were the actions specifically?
>
> [BAXTER]: You violated the Rules of Debate and Decorum. You interrupt people, which is not . . .
>
> [HICKS]: What were the specific actions then.
>
> *THE COURT: So, he just proved the point.*
>
> [BAXTER]: You asked me a question . . .
>
> *THE COURT: You didn't let him answer.*
>
> [BAXTER]: Yeah.

(Emphasis added.)

**{¶ 31}** This also includes when the judge was confronted by Hicks' unsupported accusation that the problems between him and the CCRCC started simply because Corcoran, the chairman of the CCRCC, "can't deal with" him and "doesn't like his positions." When faced with this claim, which we note the record is devoid of any evidence in support, the judge noted that even his status as a retired judge sitting by assignment from the Ohio Supreme Court did not afford him "the freedom to do what the

heck [he] want[s] when [he] want[s] to do it." The judge noted that he was instead duty bound to function as "the blind lady sitting on top of the courthouse who is going to follow the rules." The judge clearly did that when ruling on Hicks' motion for a preliminary injunction in this case. Therefore, as Hicks' final argument is nothing more than him exercising his First Amendment right to the freedom of speech by expressing his displeasure with the trial court's decision denying his motion for a preliminary injunction, a decision that we find was not unreasonable, arbitrary, or unconscionable so as to constitute an abuse of discretion, Hicks' fourth and final argument similarly lacks merit.

## Conclusion

{¶ 32} For the reasons set forth above, we find no error in the trial court's decision denying Hicks' motion for a preliminary injunction. This is because, as a review of the record and applicable law reveals, the trial court properly concluded that: (1) "there is not present at this time a substantial likelihood that [Hicks] will prevail on the merits of his complaint;" (2) Hicks "has not demonstrated that he suffered or will suffer irreparable harm as a result of his suspension from partisan political functions" of the CCRCC; and (3) "[t]here is no certainty to what extent the public interest will be served, if any," by granting Hicks a preliminary injunction. Therefore, finding no error in the trial court's decision, Hicks' single assignment of error challenging the trial court's decision to deny his motion for a preliminary injunction lacks merit and is overruled. Accordingly, having now overruled Hicks' single assignment of error, Hicks' appeal is denied.

{¶ 33} Judgment affirmed.

PIPER, J., concurs.

M. POWELL, J., concurs separately.

**M. POWELL, J., concurring separately.**

- 20 -

{¶ 34} I concur in the judgment. I further concur in the majority's reasoning except in one respect. I disagree with the majority's affirmance of the trial court's finding that there "is no statutory requirement that appointees to vacant seats must reside in the precise geographic area of the precinct which he/she represents."

{¶ 35} R.C. 3517.02 provides that "[e]ach member of a controlling committee shall be a resident and qualified elector of the district, ward, or precinct that the member is elected to represent." R.C. 3517.05 provides that a vacancy occurs when due to a committeeperson's "removal from the precinct." In construing R.C. 3517.02 and 3517.05 in pari materia, it defies logic that a vacancy may be filled with an appointee subject to the same disqualification causing the vacancy. It was error for the trial court to hold otherwise without differentiating between a party central committee's internal functions and its statutory responsibilities.

{¶ 36} However, I find the error harmless because the CCRCC permits a non-precinct-resident-appointee to participate only in the internal affairs of the committee. In this sense, the appointment is nominal and does not fill the vacancy as related to the committee's statutory responsibilities. It is settled law that

> Although political parties have certain public responsibilities, they are basically voluntary associations made up of persons who act together for various community and party purposes and who are governed in most respects by their own rules and usages. Furthermore, political parties normally provide their own procedures and tribunals for the resolution of their internal affairs.

*State ex rel. McCurdy v. DeMaioribus*, 9 Ohio App.2d 280, 281 (8th Dist. 1967).

{¶ 37} Thus, CCRCC is free to appoint non-precinct residents to vacancies for purposes of its various community and party functions. However, R.C. 3517.02 and 3517.05 require that an appointee to a vacancy be a resident of the precinct for the appointee to participate in the committee's statutory responsibilities.